## BELL–BURKE OIL CO. v. O'NEIL et al.
## (No. 1969.)

(Court of Civil Appeals of Texas. Amarillo. May 17, 1922. Rehearing Denied June 21, 1922.)

Contracts ☞198(6)—Agreement held not to require success in removing bailer from oil well and to authorize recovery for unsuccessful work.

A contract whereby plaintiffs agreed to undertake to remove a bailer from defendant's oil well, drill the well in the sand, and put it on the pump and finish it in a workmanlike manner for a consideration to be determined by the number of days required, for which defendant agreed to pay on completion of the well, when construed in the light of the difficulty of fishing the bailer out of the well and of the improbability of a party guaranteeing to perform the task successfully, does not make the compensation of plaintiffs dependent upon the success in completing the task, but they are entitled to recover at the rate specified for the time spent in admittedly proper work, though they were unsuccessful in removing the bailer, and therefore could not complete the well.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by John O'Neil and another against the Bell-Burke Oil Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. E. Lessing, of Waco, and Carrigan, Montgomery, Britain & Morgan and W. J. Townsend, all of Wichita Falls, for appellant.

Weeks, Morrow & Francis, of Wichita Falls, for appellees.

HALL, J. On September 30, 1919, the appellant company, as party of the first part, entered into a written contract with John O'Neil and H. A. O'Neil, a drilling · firm, which, omitting the formal parts, provides as follows:

"First party owns a certain oil lease on the following described property in Burkburnett, Tex., to wit: 100x150 feet, N. E. cor. block 28—that in well No. 2 on said lease there is a bailer lost in same, and the first parties desire that second parties shall undertake to clean out said well and fish said bailer out and drill said well into the oil sand and put said well on the pump, and second parties agree to undertake said work, furnishing the necessary tools for such work. However, first parties are to furnish the necessary tubing and rods, fuel, oil and water, and second parties are also to have the use, for said purpose, of any tools and material now on said lease at said well; second parties agreeing to finish said well in a workmanlike manner, upon the following consideration: The sum of seventy-five ($75.00) dollars per twelve-hour day, daylight work, and if second parties run tower, meaning nightwork, that is, working twenty-four hours on said well, they shall receive the sum of $125.00 for each such twenty-four hours work, which consideration first party hereby agrees to pay on completion of said well, and first party agrees to pay second party for said work performed whether an oil well is brought in or not.

"Witness our hands," etc.

The plaintiff's petition set out the contract in hæc verba, alleged its execution, and further that under said contract they had worked 23 days, 20 days to be computed at the rate of $75 per day and 3 days at the rate of $125 per day, and prayed for judgment in the sum of $1,875, less a credit of $600, which the company had paid on the contract. The company answered by general demurrer and general denial. The court overruled the demurrer, and, after hearing the evidence, rendered judgment for plaintiffs in the sum of $1,275.

The first and second assignments are based upon the action of the court in overruling the demurrer.

The remaining assignments assail the judgment as being unsupported by, and contrary to, the evidence. All of these assignments may be disposed of without considering them separately. We think the difficulties presented by the apparently inconsistent and conflicting clauses in the contract may be overcome and the inconsistency reconciled when the contract is construed in the light of the surrounding circumstances, and we take into consideration the practical construction which parties have made of it. It cannot be successfully contended that the contract in form and verbiage is a legal classic. It is, to say the least, extremely confusing. The plaintiffs do not in the first part of the contract bind themselves to "clean out the well and fish out the bailer," etc., at all events. The extent of their obligation is that they agree to attempt it. Fishing out a bucket 6 inches in diameter and 40 feet long, which has in some unknown and unexplained manner become fastened in the bottom of a hole 1,500 feet deep, must have been understood by the parties to be one of the most precarious possibilities known to the oil game. We can readily understand why a party would not be willing to bind himself absolutely to succeed in such an un-

dertaking. The plaintiff's pleading presents a cause of action based upon a severable contract, and we think they are correct in this interpretation of it. The compensation is fixed at stated amounts per 12-hour day and 24-hour day, respectively, and, while the recitals are that the "second parties agreeing to finish said well in a workmanlike manner," and "which consideration party of the first part hereby agrees to pay on completion of said well," it is further stipulated that the company agrees to pay the plaintiffs "for said work performed whether an oil well is brought in or not." If the parties had intended to enter into an indivisible contract and to make the compensation depend upon the completion of the work to be done, we think they would have fixed it at a sum certain. They not only provided for payment at so much per day, without designating any number of days, but the record shows that the defendant made three different payments, aggregating $600, during the time the work was being prosecuted. This is a practical construction by the parties inconsistent with the appellant's contention now. The case of Ganong & Chenoweth v. Brown, 88 Miss. 53, 40 South. 556, 117 St. Am. Rep. 731, is authority here. That was a case in which the appellants, a firm of painters, contract with the appellee, Brown, to paint and paper a certain house for him, the contract providing that the work was "to be completed in good workmanlike style for the amount set opposite, $775.00; * * * work to begin and to be finished as soon as possible." While the work was being done the house was destroyed by fire, and plaintiff sued to recover the sum of about $300 for material and labor up to the time of its destruction. The defendant in that case contended that the contract was entire and indivisible, and the court sustained a general demurrer upon that ground. Upon appeal the Supreme Court of Mississippi, in reversing the judgment, said:

" 'Whether a contract is entire or divisible cannot be determined by a single term, phrase, or sentence, though the same be large enough to include such meaning, unless throughout the whole agreement, the surrounding circumstances, and good sense and justice of the case it definitely appears that it was the intention of the parties to the contract that it should be entire and indivisible.' Applying this principle to the writing in the case, to all the circumstances surrounding the making of the contract, we do not think that this contract can be properly held to be an entire contract. It was well said by counsel for appellant that the word 'completed,' in the phrase 'to be completed in a workmanlike style for the sum set opposite,' does not mean that nothing is to be paid until the job is finished, does not refer to a limit of time with regard to payment, but means that the work throughout is to be done in a workmanlike manner."

It may fairly be inferred from the entire record that the contention of the appellant in the trial court was that appellees had not worked the full number of days claimed rather than that appellees were not entitled to recover because they had failed to do all the work specified in the contract. It was shown that in their efforts to fish the bailer out of the well they used proper appliances, and that their work was done in a workmanlike manner. In the nature of things, the well could not be drilled into the oil sand. and put on the pump until the bailer had been removed. Since no complaint is made of the manner in which the plaintiffs prosecuted the work, it would be an unjust construction of the contract, viewed in the light of all the circumstances, to hold that they were not entitled to any compensation whatever for their services.

We think the petition is sufficient as against a general demurrer, and that the judgment is sustained by the evidence.

Affirmed.